IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:25cr357-MHT |
| | ) | (WO) |
| AQUARIE JA'MAR BROWN | ) | |

OPINION AND ORDER

Defendant Aquarie Ja'Mar Brown was indicted for possessing a firearm as a person with a felony conviction, in violation of 18 U.S.C. § 922(g)(1). A United States Magistrate Judge ordered Brown detained. This case is now before the court on Brown's motion to reverse the magistrate judge's order pursuant to 18 U.S.C. § 3145(b). The court has conducted an independent and de novo review of the record and held its own evidentiary hearing on November 25. The court now finds that Brown's motion to reverse should be denied and his detention maintained.

## I. Procedural History

Brown was indicted in June 2025. After his arrest, the magistrate judge held a detention hearing and ordered him to be detained pending trial. A couple months later, Brown filed a motion to reopen the detention hearing based on his approval for admission to an inpatient substance-abuse treatment center. The magistrate judge denied the motion. Later Brown pled guilty, and at his plea hearing the magistrate judge orally ordered that he remain in detention pending sentencing.

After the plea hearing, Brown filed a motion to review and a motion to reverse the magistrate judge's detention order. His motions focused more on the magistrate judge's refusal to reopen the detention hearing than on the initial order of detention. The court granted the motion to review, and, on November 25, 2025, held an in-person evidentiary hearing on his motion to reverse.

During the November 25 hearing, defense counsel noted that a bed at the treatment facility was now available, but only until the next day. As a result, it became necessary for the court to rule immediately on the motion to reverse. The court orally denied Brown's motion and indicated that a written order would follow. This is the promised written order.

## II. Applicable Law

In his motion seeking reversal, Brown relied upon the standards for detention from 18 U.S.C. § 3142. With this statute, the Bail Reform Act created a presumption of release for pretrial detainees. *See* 18 U.S.C. § 3142(b), (c). When seeking to detain a defendant pending trial, the government has the burden to prove that the defendant poses a flight risk or dangerousness that cannot be reasonably addressed with conditions of release. *See United States v. King*, 849 F.2d 485, 488-91 (11th Cir. 1988) (setting forth procedures for district

courts to follow on motions to revoke or amend detention orders entered by magistrate judges).

However, here, Brown filed his motion after pleading guilty. As a result, the circumstances have changed. The issue is no longer release 'pending trial' but release 'pending sentencing.' After a defendant has been adjudged guilty, the legal standard changes and the burden of proof shifts. In general, 18 U.S.C. § 3143(a) then applies a rebuttable presumption of detention for almost all defendants. With one exception, the statute requires detention of defendants who have been found guilty "unless the [court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) [on personal recognizance] or (c) [subject to a condition or combination of conditions]." 18 U.S.C. § 3143(a). The one exception to this presumption is as to those defendants "for whom the applicable [sentencing]

4

guideline ... does not recommend a term of imprisonment." *Id.* Where the release-pending-sentencing presumption applies, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46.

Here, Brown conceded at the November 25 evidentiary hearing that the U.S. Sentencing Guidelines would likely recommend imprisonment for his conviction, and the court so finds.[1] Therefore, the presumption of detention applies to this case.

---

1. Under U.S. Sentencing Guideline § 2K2.1, the applicable base-offense level for Brown's offense is 20. Brown's counsel stated at the evidentiary hearing that he believes Brown would have a criminal history category of II or III. However, assuming for purposes of argument that Brown has a criminal-history category of I--the lowest category--he would have a Guidelines incarceration range of 33 to 41 months. Even if he were to receive a three-point offense-level reduction for acceptance of responsibility, the Sentencing Guidelines would still recommend a sentence of imprisonment of 24 to 30 months.

5

The court's review of the magistrate judge's detention decision is de novo. *See United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985) (stating that the district court "is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer" when reviewing detention decisions). A reviewing court may consider new evidence. *See King*, 849 F.2d at 491.

III.  Discussion

The court has reviewed the transcript of and evidence presented at the initial detention hearing before the magistrate judge, as well as all the evidence presented at the November 25 de novo hearing.

The court emphasizes that, as indicated, the applicable legal standard has changed from the original detention hearing. The court must determine whether Brown has shown by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of

6

any other person or the community if released on personal recognizance or under conditions. *See* 18 U.S.C. § 3143(a).

The court will first discuss the evidence regarding risk of flight, and then the evidence of potential danger to the community. Each factor will be assessed in light of potential conditions of release that the court could impose.

## A. Flight Risk

At the November 25 hearing before the court, Brown argued that his release would not pose a risk of flight because he is not under the influence of drugs, which, he argues, motivated his recent criminal activity; because he desires to obtain treatment for his substance-use disorders prior to sentencing; and because he is aware that fleeing could result in not only new criminal charges but also a higher sentence for the instant offense than he is currently likely to receive,

7

as fleeing would result in his not receiving a three-level reduction in offense level for acceptance of responsibility under the Sentencing Guidelines.

Assuming these assertions accurately reflect how Brown is thinking at this time, they are outweighed by the troubling evidence before the court of his history of flight from the authorities and failures to appear. Unlike in other cases where this court has allowed a defendant to seek substance-abuse treatment presentencing,[2] Brown has resisted arrest, has recently fled from the police during a traffic stop, has multiple prior failures to appear, and has repeatedly violated the terms of supervision, including by possessing a gun when

---

    2. *See United States v. Perryman*, No. 2:23cr184-MHT, 2023 WL 5144361 at *2-3 (M.D. Ala. Aug. 10, 2023) (Thompson, J.) (finding that defendant's cooperation with authorities was a factor weighing in favor of overcoming the applicable rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(A) in releasing defendant to substance-abuse treatment).

he knew he was prohibited from doing so. While the court is not saying that any one of these factors is sufficient alone, they point, when considered together, toward Brown's being a flight risk.

Furthermore, at the November 25 hearing, Brown presented evidence about a substance-abuse facility that had a bed available for him the next day. According to the testimony, the inpatient program prohibits patients from leaving the program without permission of the court or supervising officer, provides around-the-clock surveillance, and would immediately alert the patient's supervising probation officer, the court, and local law enforcement should a court-involved patient leave. However, the evidence also made clear that the facility is not secure and that patients cannot be prevented from leaving at any time. In sum, the facility is not secure, and nothing other than the fear of adverse consequences would prevent him from leaving.

9

Given Brown's history of resisting arrest, fleeing, and violating supervision conditions despite the potential for negative consequences, and the treatment program's inability to keep him from leaving, the court is not convinced that a condition of release requiring him to remain at the inpatient treatment program would ameliorate the risk of flight, and no other conditions would be sufficient to do so.  In sum, Brown has not shown by clear and convincing evidence that his release with or without conditions would not pose a risk a flight.  Therefore, the court will not order his release.

B. Danger

Though Brown's failure to prove by clear and convincing evidence that his release would not pose a risk of flight is sufficient to deny release, the court will, for the sake of completeness, also discuss the issue of danger to the community.  'Danger to the community' includes not only the risk that a defendant

would physically harm someone, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." *King*, 849 F.2d at 487 n.2. Brown has failed to show by clear and convincing evidence that he is not likely to pose a danger to another person or the community if released.  *See* 18 U.S.C. § 3143(a).

Brown has a lengthy criminal history as well as a history of violating the conditions of supervision, which histories suggest a significant risk of his committing new crimes in the future.  In 2002, he pled guilty to armed robbery, and was sentenced to 20 years in prison, split to serve 5 years in prison.  After his release in 2006, his probation was revoked, and he was sentenced to the remainder of his 20-year sentence.  In 2019, he was charged with possession of methamphetamine.  Prior to pleading guilty, an arrest warrant was issued for his failing to appear while on bond.  After serving his sentence of 18 months in prison on the offense, in 2023 he failed to report to probation, resulting in the

11

revocation of his probation and another sentence of 45 days in jail.  After he completed that brief sentence, another arrest warrant was issued for  committing new violations of probation--presumably, given the timing, five new drug-related cases--and ultimately his probation was revoked.

In September 2024, police tried to stop Brown for an unknown traffic violation, and he fled from them briefly at a high speed and discarded a gun before stopping.  In February 2025, police stopped him for not wearing a seatbelt and arrested him for obstructing justice by giving them a fake name.  He failed to appear for his plea hearing, and that obstruction case remains pending.  And, in May 2025, he was stopped by police and arrested for the firearm possession underlying the instant case.  Brown's criminal conduct has been continuous, having been interrupted, for the most part, only by his multiple terms of incarceration.

12

Brown's argument that his release would not pose a significant risk of his committing new crimes does not persuade the court. He contends that he does not pose a danger to the community because his firearm-possession offenses are not violent offenses, but offenses based on his status as a person with a felony conviction. While this may be true, they do reveal that he repeatedly violates the law, even when he faces the potential for serious adverse consequences and when he is under supervision.

Brown further argues that his struggles with substance abuse led to his carrying a weapon, and he will not do so if treated. In the past, Brown's substance-abuse issues have been apparently in remission only when he has been incarcerated. If the court releases him to a facility that he could leave freely, there is no sufficient guarantee that he would not return to the use of drugs and thus pose a danger to any other person or the community.

13

Lastly, Brown notes that the only violent conduct in his record was an armed robbery that occurred over 20 years ago in 2002, when he was 20 years old.  However, as mentioned earlier, the 'danger to the community' analysis focuses on whether the defendant is likely to commit not only violent crimes, but also crimes in general.  In the years since Brown's conviction, he has not only violated conditions of his probation, but has committed multiple crimes, both of which manifest a "danger that the defendant might engage in criminal activity to the detriment of the community." *King*, 849 F.2d at 487 n.2.  Finally, for the reasons mentioned earlier, no conditions of supervised release would eliminate the risk of danger to the community.  Because he would be free to leave the inpatient treatment facility and has demonstrated a lack of respect for the law and conditions of supervision, a condition requiring him to stay at the facility would not be sufficient to counteract the risk of danger to the community posed by

14

his release.  The court has considered whether any other conditions could achieve this end, but finds that no sufficient conditions exist.

## IV.  Conclusion

At the November 25 hearing, the court had the following exchange with defense counsel:

> "THE COURT: My second question is, in light of all of this more recent conduct in 2023, 2024, and 2025, how can I trust him to go to a facility where there is -- he's literally free to leave at any time?
>
> "[DEFENSE COUNSEL]: Admittedly, that is a tough question that would require a leap of faith from the Court."

Rough-Draft Tr. (Doc. __) at .... (cleaned up).

In light of Brown's history, the court cannot take the "leap of faith" that he seeks.  The clear and convincing evidence standard demands more from the court than trusting a defendant such as Brown in the absence of adequate safeguards.  Notwithstanding this finding, the court takes this opportunity to reaffirm its position

15

that pretrial and presentencing drug treatment are worthy goals that may justify release in appropriate cases. *See United States v. Perryman*, No. 2:23cr184-MHT, 2023 WL 5144361 at *3 (M.D. Ala. Aug. 10, 2023) (Thompson, J.) ("The court is convinced that it is in both society's and [the defendant]'s interests that, should [the defendant] receive a prison sentence, he will enter the prison environment with his mental-health and drug-addictions issues already being addressed.  In fact, information about whatever assessments and treatments he receives now can be forwarded to prison officials for their use in deciding how to treat him as a prisoner in general as well as in counseling him about which rehabilitative prison programs he should choose.").

\* \* \*

Accordingly, it is ORDERED that:

(1) The motion to reverse the detention order (Doc. 54) is denied.

16

    **(2)** Defendant Aquarie Ja'Mar Brown shall remain in custody pending sentencing.

    DONE, this the 8th day of December, 2025.

                                          /s/ Myron H. Thompson
                                        **UNITED STATES DISTRICT JUDGE**